**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 7 |
| FREDDIE LURTIS CHAPMAN, III | ) | |
| | ) | |
| Debtor. | ) | CASE NO.: 18-52134-PWB |
| | ) | |

**MOTION TO APPROVE SALE OF REAL PROPERTY**

Comes now, Freddie Lurtis Chapman, III, Debtor in the above styled Chapter 7 case, by and through undersigned counsel, and files this Motion to Approve Sale of Real Property (the "Motion") showing to this Honorable Court the following:

1.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 1334, 28 U.S.C. Section 151 et seq., and 11 U.S.C. Section 101 et seq.

2.

Venue is appropriate pursuant to 28 U.S.C. Section 1409.

3.

This matter is a core proceeding as defined in 28 U.S.C. Section 157.

4.

The Debtor filed for Chapter 7 relief on February 6, 2018.

5.

In order to meet the disposable income test of 11 U.S.C. Section 1325(b) and to comply with the terms and provisions of Debtor's Chapter 7, the Debtor agreed not to sell any assets without this Court's approval.

6.

The Debtor requests to the right to short sale the real property located at 359 Tait Road, Stockbridge, GA 30281 (the "Property"). The property is currently subject to a mortgage lien with an outstanding principal balance of approximately $143,160.00. Debtor's petition provides that the fair market value of the Property at the time of filing was $102,000.00. Wells Fargo Home Mortgage, the mortgage holder on the Property, has approved a short sale of the Property as evidenced by the approval letter attached hereto as *Exhibit A*.

7.

Debtor and Douglas Willock ("Buyer") have entered into a Purchase and Sale Agreement dated March 26, 2018 (the "Agreement"), a copy of which is attached hereto as *Exhibit B*. Buyer has agreed to purchase the Property from Debtor for $110,000.00. Maurice Hill of All Properties Professionals is the broker representing the Debtor ("Seller Broker") in connection with the sale of the Property. Seller Broker has agreed to share the commission to be paid for the sale of the Property with a broker, if any, representing Buyer.

8.

Debtor and Buyer are not related and Buyer is not an "Insider" as defined in 11 U.S.C. Section 101. There is no equity in the Property that will be available to pay Debtor's creditors as the Property is being sold as a short sale.

9.

Debtor respectfully requests that he be allowed to sell the Property.

WHEREFORE Debtor prays:

(a) That this "Motion" be filed, read and considered;

(b) That Debtor be allowed to sell the Property; and

(c) That this Honorable Court grants such other and further relief as it may deem just and

proper.

Dated this 28th day of March, 2018

Respectfully Submitted,

_____/s/_____
Howard Slomka, Esq.
GA Bar #652875
Attorney for Debtor
Slipakoff and Slomka, PC
Overlook III
2859 Paces Ferry Rd, SE
Suite 1700
Atlanta, GA 30339
(404) 800-4001

**EXHIBIT A**



**Account Information**

| | |
|---|---|
| Online: | Wellsfargo.com |
| Fax: | 1-866-969-0103 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of Operation: | Mon-Thu, 7:00 AM - 9:00 PM |
| | Fri, 7:00 AM - 8:00 PM |
| | Sat, 8:00 AM - 4:00 PM |
| | ( al Time |
| Loan Number: | 37089 |
| Property Address: | 359 TAIT RD |
| | STOCKBRIDGE, GA 30281-4395 |

02/05/2018

Freddie L Chapman Iii
359 TAIT RD
STOCKBRIDGE, GA 30281-4395

Subject:    Notice of short sale status on your mortgage
Projected closing date: 04/06/2018

Dear Freddie L Chapman Iii:

We're writing to let you know that we have conditionally approved you for a short sale on the property referenced above. The following notice of short sale approval will provide all of the conditions and requirements that must be met before the short sale transaction can be finalized.

**What you need to know about a short sale**
With a short sale, you may have the option to sell your home for less than the amount owed on your mortgage. By doing this, you will be released from your obligation to pay back your primary mortgage under its original terms. And as your mortgage servicer, Wells Fargo Home Mortgage will accept the proceeds of the sale as payment in full.

As the homeowner, you may be able to:
- Avoid a foreclosure sale
- Stay in your home until the new owner closes, giving you time to make other living arrangements
- Pay no fees — all closing costs and real estate agent fees will be paid by Wells Fargo Home Mortgage
- Eliminate your loan debt

**Conditions you must meet to complete a short sale**
Your short sale approval is based on the purchase contract between Freddie L Chapman Iii, the seller(s), and COSTA PANOS, the buyer(s), for a purchase price of $90,000.00. The minimum amount we must receive for the sale of the property after all deductions have been made is called the **acceptable net sale proceeds amount**. The terms of our approval and instructions to you and your closing agent are as follows:

## Section one — transaction overview

1. The acceptable net sale proceeds amount is $82,302.00.

2. The following transaction details summarize the information noted above:

| | |
|---|---|
| Approved purchase price: | $90,000.00 |
| Acceptable net sale proceeds amount: | $82,302.00 |
| Borrower payment: | |
| Cash at closing: | $0.00 |

## Section two — approved seller closing costs

Approved Seller Closing Costs:

| | |
|---|---|
| Real Estate Commission: | $5,400.00 |
| TITLE AND ESCROW | $1,270.00 |
| TAXES | $1,028.00 |

Excess funds, if any, must be paid to Wells Fargo Home Mortgage

## Section three — before we can finalize your short sale

- Acknowledge and waive any and all rights to any escrow balance, insurance proceeds, or refunds from prepaid expenses.

- You, or any other party, cannot receive any sale proceeds or any funds as a result of this transaction except as specified in this notice.

- The purchase contract may not be amended without Wells Fargo Home Mortgage prior written approval.

- Ensure that any relationship among a participating broker/real estate agent has been disclosed prior to issuing this notice of short sale approval (unless the property is secured by a VA loan). This transaction may not close if it involves any third party who received a deed from the borrower/seller at, before, or after closing, and the purchase contract may not be assigned.

   In addition, the sale must be an "arm's length transaction". This means the parties to the transaction (buyer, seller, and their respective agents) cannot have a close personal or business relationship. Also, the buyer and seller, and/or any agent of the buyer or seller, cannot knowingly misrepresent the fair market value of the property during this sale/purchase of the property. Any knowing violation of the arm's length transaction requirement or misrepresentation of the fair market value may cause this approval to be void and Wells Fargo Home Mortgage may pursue available remedies at law.

- If you have any home equity loans, lines, junior liens or other subordinate liens (like a tax or mechanic's lien) on your property, they will be considered separately from your transaction. To ensure the short sale proceeds smoothly, it is essential for you to begin working with any other creditors immediately after being approved for a short sale. If you do not resolve transactions with other lien holders it could cause delays or even cancelation of the short sale closing.

- All parties to the transaction must agree to the conditions of the short sale affidavit. If any party of the transaction does not agree to the conditions of the short sale affidavit and complete the document as allowed by applicable law, this notice of approval will be null and void. The short sale affidavit must be completed and returned to Wells Fargo Home Mortgage prior to the closing date. This affidavit can be sent by fax or mail:

   Fax:    1-866-969-0103

Mail:   Wells Fargo Home Mortgage
1000 Blue Gentian Road, Suite 300
MAC X9999-01N
Eagan, MN 55121

- If you're involved in a bankruptcy, please understand that additional court consent may be needed, if consent is not provided it may prevent us from completing the short sale. If you have questions, please consult with your bankruptcy attorney.

- This notice of short sale approval is contingent upon confirming that COSTA PANOS meets any required re-sale deed restrictions defined by the mortgage or deed of trust for the above mentioned property.

- If you do not comply with any of the conditions/requirements included in this notice, it results in our refusal to issue a satisfaction, release, or conveyance of your mortgage.

- In accordance with state and local laws, this conditional approval may be voided at any time (at the discretion of Wells Fargo Home Mortgage).

- You, as the seller, must advise your closing agent that they must contact us no later than 48 hours before the scheduled closing date and provide a copy of the final closing disclosure. The final closing disclosure must comply with the approval terms included in this notice and must contain complete buyer and seller information, including a forwarding address for the seller. In addition, the closing agent must provide the fully executed HUD Closing Worksheet for FHA loans. If closing is delayed and/or rescinded, we must be notified immediately to review the request and provide written approval, if granted per investor or mortgage insurance guidelines.

- In addition, you as the seller, for and in consideration of the approval, closing, and funding of the short sale, agree that you will re-sign any documents after closing if any corrections are needed. These corrections may be due to any typographical or clerical errors discovered in any or all of the closing documentation required to be signed at the time of closing.

- The acceptable net sales proceeds, together with any excess funds, must be wired to:
  Wells Fargo Home Mortgage
  Account N° ·        )2097
  ABA No.: :       )248
  Special Information for Beneficiary:
  Apply funds to loan: :          )37089
  From: Sender's name, phone number

Please note: The above information is mandatory and if not provided, the wire will be rejected.

- After certified funds are received and approval is final, a document releasing the mortgage will be sent to record this decision.

- The closing documents should be faxed to 1-866-969-0103 on the closing date.

## What you need to know about any remaining balance on your loan
- The estimated amount of total debt outstanding as of the date of this letter is $143,703.41.

- Because, with a short sale transaction, the home is sold for less than the total debt outstanding, there may be a deficiency balance. This is the dollar difference between the total debt outstanding and the acceptable sale proceeds amount. The estimated deficiency balance as of the date of this letter is $61,401.41.

- Please take note that the investor (and all other interested parties) on your loan, in releasing its security interest in this real property, waives the right to collect that amount that constitutes full payment of the secured debt.

- Wells Fargo Home Mortgage will notify the major credit reporting agencies to reflect this loan as "account paid in full with less than full balance," which should appear on your credit report following the completion of the short sale. However, Wells Fargo Home Mortgage is not a reporting agency and cannot control how or when the report will reflect information to other users of credit reports.

- Wells Fargo Home Mortgage will report amounts of debt that have been cancelled to the IRS, if required to do so under IRS regulations.

**I'm here to help**

I look forward to working with you, and encourage you to call me at the phone number below if you have any questions about the information in this letter.

Sincerely,

**CASSIDY HERNANDEZ**
Home Preservation Specialist
Phone: 844-817-4413 ext. 5154465439

Fax: 1-866-969-0103

**Contact us**

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.
Please include your account number with all correspondence.

Get free counseling to help manage expenses and avoid foreclosure. Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. Completed short sales and deeds in lieu of foreclosure, sometimes referred to as Mortgage Release, may be reported to the consumer reporting agencies as paid-in-full for less than the balance

Wells Fargo Home Mortgage cannot dispense tax or legal advice. Please consult a tax advisor and/or attorney regarding any consequences associated with a short sale or deed in lieu of foreclosure, sometimes referred to as a Mortgage Release.

The mortgage must be in default on the date the pre foreclosure short sale transaction closes, pursuant to Section 204 of the National Housing Act (12 U.S.C. 1710 (1)D); pre foreclosure short sale and deed in lieu of foreclosure (DIL) transactions are generally reported to credit bureaus, and will likely affect the mortgagor's ability to obtain another mortgage and other types of credit; if the mortgagor is a servicemember, it is recommended that the mortgagor obtain guidance from his/her employer regarding the pre foreclosure short sale or deed in lieu of foreclosure impact on his/her security clearance and employment; and pre foreclosure short sale and deed in lieu of foreclosure transactions are generally reported to the Credit Alert Interactive Voice Response System (CAIVRS) which may result in his/her inability to obtain government financing or affect other government benefits for a certain period of time.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. ©2016 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

**EXHIBIT B**

Authentisign ID: 07EFDC9D-49D8-447A-9222-556941D98DD1

# PURCHASE AND SALE AGREEMENT

Offer Date: _____ 3/25/2018 _____

**ALL PROPERTIES PROFESSIONALS**

*Georgia REALTORS®*

## A. KEY TERMS AND CONDITIONS

2018 Printing

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

   a. **Property Identification:** Address: __359    Tait Rd__
   City ____Stockbridge____ , County _____Henry_____ , Georgia, Zip Code ____30281____
   MLS Number: ____8339978____    Tax Parcel I.D. Number: _____031A03019000_____

   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☐ (1) attached as an exhibit hereto;
   ☒ (2) the same as described in Deed Book __11829__ , Page __345__ , et. seq., of the land records of the above county; OR
   ☐ (3) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
   Lot __139__ , Block _____ , Unit _____ , Phase/Section _____
   of ____Eagles Ridge____ , Subdivision/Development, according
   to the plat recorded in Plat Book _____ , Page _____ , et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ ____110,000____

3. **Closing Costs.**
   Seller's Contribution at Closing: $ ____0____

4. **Closing and Possession.**
   Closing Date shall be ____4/12/2018____ with possession of the Property transferred to Buyer
   ☒ at Closing OR ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F140 Temporary Occupancy Agreement).

5. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F84(A) must be attached as an exhibit hereto, and F84(B) must be signed by Closing Attorney.)
   ____Gilroy Bailey Trumble LLC.____

6. **Closing Attorney/Law Firm.**
   ____Gilroy Bailey Trumble LLC.____

7. **Earnest Money.** Earnest Money shall be paid by ☐ check ☐ cash or ☒ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☒ b. $ ____1,000____ within __2__ days from the Binding Agreement Date.
   ☐ c. _____

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of __5__ days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
   (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
   (2) shall pay Seller additional option money of $ ____n/a____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; OR ☐ within __n/a__ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F54 Lead-Based Paint Exhibit) OR ☒ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Selling Broker is** __All Properties Professionals__ **and is:**
    (1) ☐ representing Buyer as a client.
    (2) ☒ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Buyer.

    b. **Listing Broker is** __All Properties Professionals__ **and is:**
    (1) ☒ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Seller.

    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    __n/a__

11. **Time Limit of Offer.** The Offer set forth herein expires at __5__ o'clock __P__ .m. on the date ____3/26/2018____ .
    Buyer(s) Initials [initials]    Seller(s) Initials [initials]

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ____Maurice Hill____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2018 by Georgia Association of REALTORS®, Inc.    F20, Purchase and Sale Agreement, Page 1 of 8, 01/01/18

InstanetFORMS

Authentisign ID: 07EFDC9D-49D8-447A-9222-566941D98DD1

## B. CORRESPONDING PARAGRAPHS FOR SECTION A

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney:  (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing.  In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating.  Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension.  If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At time of possession, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property. If Buyer's possession is after closing, Seller shall provide Buyer with one set of keys to the Property at closing and all keys at the time of possession.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

**7. Earnest Money.**

   **a. Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.

   **b. Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall offer to disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. If Seller accepts the offer and Holder issues a check to Seller which is deposited by Seller, it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain and are not a penalty. Nothing herein shall prevent the Seller from declining the tender of the earnest money by the Holder. In such event, Holder, after giving Buyer and Seller the required ten (10) day notice of the proposed disbursement, shall disburse the earnest money to Buyer.

   **c. Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.

   **d. Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

**8. Inspection and Due Diligence.**

   **a. Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.

   **b. Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. If **Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**

   **c. Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

   **d. Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
   (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
   (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
   (3) **Notice of Decision Not To Proceed:** If Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.

   **e. Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.

Instanet FORMS

AuthentiSign ID: 07EFDC9D-49D8-447A-9222-566941D98DD1

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**
   **a. Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
   **(1) No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
   **(2) Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
   **i. Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
   (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
   (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
   (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
   (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
   **ii. Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
   **b. Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.
   **c. Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to advise Buyer and Seller on any matter relating to the Property which could have been revealed through a survey, title search, Official Georgia Wood Infestation Report, inspection by a professional home inspector or construction expert, utility bill review, an appraisal, inspection by an environmental engineering inspector, consulting governmental officials or a review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax planner. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

1. **Notices.**
   **a. Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
   **b. Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

InstanetFORMS

Authentisign ID: 07EFDC9D-49D8-447A-9222-566941D96DD1

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**

   a. **Rights of Buyer or Seller:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.

   b. **Rights of Broker:** In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty. In the event a Broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement.

   c. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**

   a. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.

   b. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

   c. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

   d. **Time of Essence:** Time is of the essence of this Agreement.

   e. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

   f. **Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.

   g. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

   h. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

   i. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.

InstanetFORMS

**j.    GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these GAR forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

**k.    No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party.

**l.    Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

**5.    Beware of Cyber Fraud.** Fake e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fake e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in wiring funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fake verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

**6.    Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control.

☒ All Cash Sale Exhibit (F79) "____A____"
☐ Back-up Agreement Contingency Exhibit (F91) "_____"
☒ Closing Attorney Acting as Holder of Earnest Money Exhibit (F84(A)) "____B____"
☐ Condominium Resale Purchase and Sale Exhibit (F33) "_____"
☐ Conventional Loan Contingency Exhibit (F64) "_____"
☐ FHA Loan Contingency Exhibit (F63) "_____"
☐ Lead-Based Paint Exhibit (F54) "_____"
☐ Lease Purchase and Sale Exhibit (F29) (to be used with F30) "_____"
☐ Lease for Lease/Purchase Agreement (F30) (to be used with F29) "_____"
☐ Legal Description Exhibit (F147) "_____"
☐ Loan Assumption Exhibit (F61) "_____"
☐ Payment of Community Association Fees, Disclosures and Related Issues Exhibit (F55) "_____"
☐ Sale or Lease of Buyer's Property Contingency Exhibit (F90) "_____"
☐ Seller's Property Disclosure Statement Exhibit (F50, F51, F52 or F53) "_____"
☐ Survey of Property as Exhibit "_____"
☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F140) "_____"
☐ USDA-RD Loan Contingency Exhibit (F78) "_____"
☐ VA Loan Contingency Exhibit (F65) "_____"
☒ Other **Short Sale Exhibit (C)** _____
☐ Other _____
☐ Other _____
☐ Other _____

Copyright© 2018 by Georgia Association of REALTORS®, Inc.

InstanetFORMS

Authentisign ID: 07EFDC9D-49D8-447A-9222-565941D98DD1

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1. All ceiling fans, blinds, light fixtures, stove, and dishwasher shall remain with said property at no cost to the Purchaser.

2. Buyer agrees to accept the Property in "as is" condition and will not request that the defects be repaired or replaced in any amendment submitted on the Property.

3. All parties acknowledge that Freddie L. Chapman III is a real estate licensee under the law of
Georgia and is acting as a principal in this transaction.

**Additional Special Stipulations** ☐ are or ☒ are not attached.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.                    F20, Purchase and Sale Agreement, Page 7 of 8, 01/01/18

Instanet FORMS

Authentisign ID: 07EFDC9D-49D8-447A-9222-566941D98DD1

## Buyer Acceptance and Contact Information

_Authentisign_
_Douglas Willock_

**1 Buyer's Signature**

Douglas Willock                               03/25/2018
Print or Type Name                            Date

2901    NW 156 Street
Buyer's Address for Receiving Notice

Opa Locka                        FL    33054

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

**2 Buyer's Signature**

Print or Type Name                            Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

Additional Signature Page (F149) ☐ is  ☒ is not attached.

## Seller Acceptance and Contact Information

_Authentisign_
_Freddie L Chapman_

**1 Seller's Signature**

Freddie L. Chapman III                        03/26/2018
Print or Type Name                            Date

359    Tait Rd
Seller's Address for Receiving Notice

Stockbridge                      GA    30281

n/a
Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

**2 Seller's Signature**

n/a
Print or Type Name                            Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

Additional Signature Page (F149) ☐ is  ☒ is not attached.

## Selling Broker/Affiliated Licensee Contact Information

All Properties Professionals
Selling Brokerage Firm

_Authentisign_
_Maurice Hill_                               03/25/2018
Broker/Affiliated Licensee Signature          Date

Maurice Hill                     182243
Print or Type Name               GA Real Estate License #

6787548000                   (404) 920-2664
Licensee's Phone Number          Fax Number

mchill@allpropertiespro.com
Licensee's E-mail Address

Dekalb Board of Realtors
REALTOR® Membership

100 Hartsfield Ctr Pkwy #500
Broker's Address

Hapeville               GA    30354

4044196002                   4049202664
Broker's Phone Number            Fax Number

APRP01                       76275
MLS Office Code              Brokerage Firm License Number

## Listing Broker/Affiliated Licensee Contact Information

All Properties Professionals
Listing Broker Firm

_Authentisign_
_Maurice Hill_                               03/25/2018
Broker/Affiliated Licensee Signature          Date

Maurice Hill                     182243
Print or Type Name               GA Real Estate License #

678-754-8000                 404-920-2664
Licensee's Phone Number          Fax Number

mchill@allpropertiespro.com
Licensee's Email Address

Dekalb Board of Realtors
REALTOR® Membership

100 Hartsfield Ctr Pkwy #500
Broker's Address

Hapeville               GA    30354

404-419-6002                 404-920-2664
Broker's Phone Number            Fax Number

APRP01                       76275
MLS Office Code              Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of    March 26, 2018
and has been filled in by    Maurice C. Hill

Copyright© 2018 by Georgia Association of REALTORS®, Inc.                    F20, Purchase and Sale Agreement, Page 8 of 8, 01/01/18

InstanetFORMS

Authentisign ID: 07EFDC9D-49D8-447A-9222-566841D98DD1



# SHORT SALE CONTINGENCY
# EXHIBIT "  c  "



**2017 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____ **3/25/2018** _____ for the purchase and sale of that certain Property known as: __**359**____**Tait Rd**_____, ____**Stockbridge**_____, Georgia ____**30281**____.

1. **Terms.** Buyer acknowledges that the sale of the Property will not generate sufficient cash to pay off the mortgages and, if applicable, others liens on the Property while at the same time meeting Seller's other obligations herein. This Agreement is therefore contingent upon Seller's mortgage lender(s) and, if applicable, other lien holders agreeing to:

   a. take a reduced pay off such that the purchase price of the Property is sufficient to satisfy and discharge all of the mortgage(s), liens, judgments and other encumbrances on the Property, pay the real estate commission(s) owing to the Broker(s) and pay the other expenses Seller herein, without Seller having to pay any additional sums; and
   b. release Seller from any claim, cause of action or suit for any deficiency or other monetary amount.

2. **Right to Terminate.** In the event, the mortgage lender(s) and, if applicable, other lien holders, do not agree in writing to the above terms at least _____ days from Binding Agreement, either Seller or Buyer may terminate this Agreement, without penalty, upon notice to the other party. Seller shall in good faith, use all reasonable efforts, to provide the lender(s) and, if applicable, other lien holders, with all required documentation and to immediately notify Buyer of the agreement or denial by the mortgage lender(s) and, if applicable, other lien holders to the terms set forth herein.

3. **Release of Seller Liability.** If the mortgage lenders and, if applicable, other lien holders agree to take a reduced payoff, it shall be the sole responsibility of Seller to verify that they are also releasing Seller from further liability.

4. **Earnest Money.** Buyer agrees to pay Holder the Earnest Money referenced herein within _____ days from the date Seller provides written evidence from Seller's lender(s) and other lien holders that the short sale transaction reflected herein has been approved.

5. **Arms Length Transaction.** Seller and Buyer each warrant that this Purchase and Sale Agreement is an "arm's length" transaction and that neither party are related to one another by blood, marriage, adoption or through any type of shared business enterprise. The Buyer agrees not to sell the Property within ninety (90) days of closing of this sale.

6. **Property in a Community Association.** Notwithstanding any other provision to the contrary contained elsewhere herein, including in any other exhibit to this Agreement, if the Property is located in a community association, Buyer shall pay the cost of any community association account statement or clearance letter including, but not limited to, any amount, however characterized, required to be prepaid in order to obtain such community association account statement or clearance letter (excluding any assessments or special assessments owing to the community association), but the amount paid by the Buyer shall be credited against the purchase price of the Property at Closing.

Buyer's Initials: _____[__MH__]_____    Seller's Initials: _____[__FLC__]_____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH ____**Maurice Hill**____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2017 by Georgia Association of REALTORS®, Inc.              F94, Short Sale Contingency Exhibit, 05/01/17

instanetFORMS

Authentisign ID: 07EFDC9D-49D6-447A-9222-566941D98DD1



## ALL CASH SALE
## (NO FINANCING CONTINGENCY)
## EXHIBIT " A "



**2018 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____ **3/25/2018** _____ for the purchase and sale of that certain
Property known as: __359   Tait Rd_____, _____ **Stockbridge** ____, Georgia __30281__ .

1. **All Cash Sale.** While Buyer has sufficient liquid assets to purchase the Property in this transaction for "all cash", Buyer:
   ☐ reserves the right to pay all or a portion of the purchase price by obtaining an institutional first mortgage secured by a deed to secure debt on the Property; or
   ☐ shall not have the right to obtain mortgage financing to pay for all or a portion of the purchase price of the Property

2. **Right to Unilaterally Extend Closing Date.** If Buyer obtains mortgage financing to purchase all or any portion of the Property, Buyer:
   ☐ shall not have the right to unilaterally extend the Purchase and Sale Agreement for eight (8) days in the event the mortgage lender is delayed and cannot fulfill its obligations; OR
   ☒ shall have such rights to unilaterally extend the closing date as are set forth elsewhere in the Purchase and Sale Agreement.

3. **Verification of Funds.** Within ___2___ days from the Binding Agreement Date Buyer shall be obligated to provide or cause to be provided to Seller information describing in specific detail all of the sources of Buyer's funds to purchase the Property ("Required Information"). The Required Information shall consist of at least one of the following:
   **A.** A letter or letters from a trust, stock brokerage firm and/or financial institution holding funds, stocks, bonds and/or other assets (hereinafter collectively referred to as "Assets") of or on behalf of Buyer and dated subsequent to the Binding Agreement Date stating that Buyer has funds of at least an amount specified in the letter and/or Assets on deposit with the institution of a value specified in the letter, that are sufficient to allow Buyer to complete the purchase of the Property;
   **B.** An account statement or statements from the trust, stock brokerage firm and/or financial institution(s) holding funds and/or Assets confirming a specific amount of funds and/or Assets on deposit with the institution. Such account statement must be for the regular time period that such statements are issued immediately preceding the Binding Agreement Date.

4. **Authorization and Security.** Buyer does hereby authorize Seller and Listing Broker to communicate with any person providing information regarding Buyer's source of funds to purchase the Property to verify such information and to answer any questions Seller or Listing Broker may have regarding the source of Buyer's funds to purchase the Property. In providing any account statement to Seller, Buyer shall be entitled to delete or otherwise shield account numbers, social security numbers, telephone numbers and other information the release of which could jeopardize the security of the account or put the Buyer at greater risk of identity theft.

5. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Required Information within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

6. **Appraisal Contingency.** In addition to the other rights of Buyer set forth herein, this Agreement ☒ shall or ☐ shall not be subject to the Property appraising for at least the purchase price. Buyer shall have the rights set forth in this exhibit in the event the Property does not appraise for at least the purchase price in accordance with the terms and conditions set forth below:
   **A. Type of Appraisal:** The appraisal shall be a "certified appraisal" of the Property (as that term is defined in O.C.G.A. § 43-39A-2) performed or signed off by a licensed or certified appraiser (as those terms are defined in the rules and regulations of the Georgia Real Estate Appraiser's Board) and include a statement that the appraiser performed an "independent appraisal assignment" (as that term is defined in O.C.G.A. § 43-39A-2(13)) with respect to the Property.
   **B. Selection of Appraiser:** The appraiser shall be selected by *[Select one. The sections not selected shall not be a part of this Agreement.]:* ☒ Buyer, ☐ Seller, OR ☐ Other (_____); and all parties agree that this appraiser shall only perform a single certified appraisal of the Property.

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** ____**Maurice Hill**____ **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**

Copyright© 2018 by Georgia Association of REALTORS®, Inc.          F79 All Cash Sale Exhibit, Page 1 of 2, 01/01/18

InstanetFORMS

Authentisign ID: 67EFDC9D-49D6-447A-9222-566941D98DD1

**C. Rights of Buyer If Property Does Not Appraise:** If any appraisal performed pursuant to and in accordance with this exhibit is for less than the purchase price of the Property, the Buyer shall have the right to request within _____ days from the Binding Agreement Date that Seller reduce the sales price of the Property to a price not less than the appraisal price by submitting an Amendment to Sales Price ("ATSP") to Seller along with a complete copy of the appraisal which is for less than the purchase price. In the event that Buyer does not submit an ATSP within the time frame referenced above, Buyer shall be deemed to have waived Buyer's right to request a reduction in the sales price and this Agreement shall no longer be subject to an appraisal contingency. The time limit of the offer for the Seller to accept or reject the ATSP shall run through the earlier of: (1) three (3) days from the date that the ATSP is delivered to Seller; or (2) the time of closing (excluding any extensions of the closing resulting from the unilateral extension of the closing date).

If Seller does not accept the ATSP, Buyer shall have the right, but not the obligation, to terminate this Agreement without penalty upon notice to Seller, provided that such notice is given within three (3) days of the earlier of: (a) the date that Buyer receives notice that Seller has not accepted the ATSP; or (b) the last date Seller could have accepted the ATSP. In neither circumstance shall the Buyer's right to terminate extend beyond the time of closing.  Nothing herein shall require Buyer to seek a reduction in the sales price of the Property. In such event, Buyer shall be obligated to purchase the Property for the price set forth in this Agreement.

**D. Buyer Not Obligated to Seek Price Reduction:** Nothing herein shall require Buyer to seek any reduction in the sales price of the Property. If Buyer does not seek a reduction in the sales price, Buyer shall be obligated to purchase the Property for the price agreed to by the parties in the Agreement.

Buyer's Initials: _____          Seller's Initials: _____

Instanet FORMS

Authentisign ID: 07EFDC9D-49D8-447A-9222-566941D98DD1



# CLOSING ATTORNEY ACTING AS
# HOLDER OF EARNEST MONEY
# EXHIBIT " B "
### [Closing Attorney must still consent to serve as Holder using F84(B)]



**2018 Printing**

This Exhibit is part of the Agreement with an Offer Date of _____**3/25/2018**_____ for the purchase and sale of that certain property known as: __**359  Tait Rd**_____ **Stockbridge** , Georgia __**30281**__ .

1. **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money conditioned upon the Closing Attorney timely agreeing to serve as Holder, in accordance with the terms of the Agreement (including this Exhibit) and the Agreement of Closing Attorney to Serve as Holder of Earnest Money Exhibit;

2. **Closing Attorney Must Agree to Become Holder Within Three (3) Business Days of the Binding Agreement Date.** The Closing Attorney shall not become the Holder unless the Closing Attorney has within three (3) business days of the Binding Agreement Date: a) signed the Agreement of Closing Attorney to Serve as Holder of Earnest Money (GAR Form F84(B)) without modification ("Escrow Agreement"); and b) delivered the same to Buyer and Seller. When this occurs, the Closing Attorney shall be deemed the Holder and the signed Escrow Agreement shall be deemed to be a part of this Agreement. The duties of the Closing Attorney as Holder and the time periods for performing those duties shall not commence with respect to this Agreement or any amendment thereto until the Closing Attorney receives a fully-executed copy of this Agreement or the amendment thereto, as the case may be.

3. **Buyer Must Deliver Purchase and Sale Agreement to Closing Attorney Within One (1) Business Day of Binding Agreement Date.** Buyer shall be responsible to provide this Agreement and any amendment thereto within one (1) business day of it becoming binding and to promptly seek the consent of the Closing Attorney to act as the Holder if that consent has not already been obtained. Buyer shall be in default of this Agreement if Buyer fails to timely deliver the Agreement or any Amendment thereto within one (1) business day of it becoming binding. Such default shall give Seller the right to terminate this Agreement upon notice to Buyer, provided, however, that if such notice is not given within seven (7) days thereafter, Seller's right to terminate due to Buyer's default shall be waived. Buyer shall additionally be responsible for paying all earnest money and other Buyer trust funds to Holder in accordance with the terms of this Agreement and any amendments thereto and immediately notifying Seller when the same has been accomplished.

4. **Failure of Closing Attorney to Timely Agree to Become Holder.** If the Closing Attorney named as Holder has not become Holder within three (3) business days of the Binding Agreement Date then: a) the Alternate Holder defined and referenced below shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same.

5. **Alternate Holder.** Buyer and Seller agree that in the event the Closing Attorney does not become the Holder, the following Alternate Holder ("Alternate Holder") who shall be a real estate broker in this Agreement shall become the Holder. The Alternate Holder hereby agrees to immediately serve as Holder pursuant to this Agreement. In this transaction the Alternate Holder shall be **n/a** _____. The signature of the Alternate Holder to this Agreement shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall not commence until the Alternate Holder become the Holder.

6. **Notices to and From Holder.** The notice procedures in the Agreement shall control with regard to all notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.

7. **Closing Attorney's Contact Information**

   Closing Attorney: _____**Gilroy Bailey Trumble LLC.**_____
   Address: _____**3780 Mansel Rd. #140**_____
   _____**Alpharetta, GA 30022**_____
   Phone Number: _____**770-518-5515**_____
   Fax Number: _____**770-518-5516**_____
   Email: _____**contactus@gilroyfirm.com**_____

Buyer's Initials: [ *DH* ]          Seller's Initials: [ *JLC* ]

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __**Maurice Hill**__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.          F84(A), Closing Attorney Acting as Holder of Earnest Money Exhibit, 01/01/18

Instanet FORMS



## AGREEMENT OF CLOSING ATTORNEY TO SERVE AS HOLDER OF EARNEST MONEY ("ESCROW AGREEMENT")

[Should only be used when F84(A) Closing Attorney Acting as Holder of Earnest Money Exhibit has been made part of the Purchase and Sale Agreement]



**2018 Printing**

For and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the following closing attorney or law firm: _____ **Gilroy Bailey Trumble LLC.** _____ ("Closing Attorney") having been named as Holder in the purchase and sale agreement by and between **Douglas Willock** __n/a__ ("Buyer") and **Freddie L. Chapman III** __n/a__ ("Seller") with an offer date of __**Mar**__ __**25**__ , 2018 for real property located at: __**359**__ __**Tait Rd**__ __**Stockbridge**__ __**GA**__ __**30281**__ ("Agreement") does hereby agree to serve as Holder in such Agreement, subject to the terms herein.

**A.  TERMS OF CLOSING ATTORNEY ACTING AS HOLDER.** The terms under which the Closing Attorney agrees to serve as Holder are in the Agreement as follows:

1.  Closing Attorney shall have all of the preprinted rights and duties of Holder set forth in the Agreement without amendment or modification;
2.  The fee or charge for Closing Attorney serving as Holder is $ _____ n/a _____ and shall be paid at Closing by: _____ n/a _____ ;
3.  Closing Attorney's duties as Holder and the time period in which they are to be performed shall not commence under the Agreement or any amendment thereto until Closing Attorney actually receives the Agreement or the amendment, as the case may be;
4.  Time is of the essence; and
5.  This Escrow Agreement shall be interpreted in accordance with the laws of the State of Georgia;
6.  This Escrow Agreement and the Agreement, as the same may be amended, constitutes the entire agreement among the parties relative to Closing Attorney serving as Holder. This Escrow Agreement and that portion of the Agreement dealing with the rights and duties of the Holder shall not be amended, altered or changed except by written agreement signed by Buyer, Seller and Holder.

**B.  CLOSING ATTORNEY MUST AGREE TO BECOME HOLDER WITHIN THREE (3) BUSINESS DAYS OF THE BINDING AGREEMENT DATE.** The Closing Attorney shall not become the Holder unless the Closing Attorney has within three (3) business days of the Binding Agreement Date: a) signed this Escrow Agreement without modification; and b) delivered the same to Buyer and Seller. When this occurs, the Closing Attorney shall be deemed to be the Holder and the signed Escrow Agreement shall be deemed to be a part of this Agreement.  The duties of the Closing Attorney as Holder and the time periods for performing those duties shall not commence with respect to this Agreement or any amendment thereto until the Closing Attorney receives a fully-executed copy of this Agreement or the amendment thereto, as the case may be.

**C.  FAILURE OF CLOSING ATTORNEY TO TIMELY AGREE TO BECOME HOLDER.** If the Closing Attorney named as Holder herein has not become Holder within three (3) business days of the Binding Agreement Date then: a) the Alternate Holder referenced in the Closing Attorney Acting as Holder of Earnest Money Exhibit shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same.

**D.  CONTACT INFORMATION**

| | |
|---|---|
| Buyer's Name: __**Douglas Willock**__ | Seller's Name: __**Freddie L. Chapman III**__ |
| Address: __**2901**__ __**NW 156 Street**__ | Address: __**359**__ __**Tait Rd**__ |
| __**Opa Locka**__ __**FL**__ __**33054**__ | __**Stockbridge**__ __**GA**__ __**30281**__ |
| Phone Number: __**786-262-5000**__ | Phone Number: __**404-310-0081**__ |
| Fax Number: __n/a__ | Fax Number: __n/a__ |
| Email: _____ __om__ | Email: __**.oo.com**__ |
| | |
| Buyer's Name: __n/a__ | Seller's Name: __n/a__ |
| Address: _____ | Address: _____ |
| Phone Number: _____ | Phone Number: _____ |
| Fax Number: _____ | Fax Number: _____ |
| Email: _____ | Email: _____ |

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH __**Maurice Hill**__ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.    F84(B), Agreement of Closing Attorney to Serve as Holder of Earnest Money, Page 1 of 2, 01/01/18

Instanet FORMS

Authentisign ID: 07EFDC9D-49D8-447A-0222-566941D96DD1

| | |
|---|---|
| Buyer Licensee's Name: **Maurice Hill** | Seller Licensee Name: **Maurice Hill** |
| Address: **100 Hartsfield Ctr Pkwy #500** | Address: **100 Hartsfield Ctr Pkwy #500** |
| **Hapeville        GA      30354** | **Hapeville        GA      30354** |
| Phone Number: **6787548000** | Phone Number: **678-754-8000** |
| Fax Number: **(404) 920-2664** | Fax Number: **404-920-2664** |
| Email: **mchill@allpropertiespro.com** | Email: **mchill@allpropertiespro.com** |

**Closing Attorney**

By: _____
    Signature of Its Authorized Representative

**Gilroy Bailey Trumble LLC**
Print or Type Name

    **3780 Mansell Rd #140**
Closing Attorney's Address

    **Alpharetta, GA 30022**

    **contactus@gilroyfirm.com**
E-mail Address of Holder

    **770-518-5515**
Telephone Number of Holder

    **770-518-5516**
Facsimile Number of Holder

Instanet FORMS

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:                                  )
                                        )            CHAPTER 7
FREDDIE LURTIS CHAPMAN, III             )
                                        )
        Debtor.                         )            CASE NO.: 18-52134-PWB
                                        )

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that Freddie Lurtis Chapman, III has filed a "MOTION TO APPROVE SALE OF REAL PROPERTY".

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion to Approve Sale of Real Property in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia at 10:00 A.M. on May 15, 2018.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one). If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your view, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Room 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

DATE: March 28, 2018

                                        _____/s/_____
                                        Howard Slomka, Esq.
                                        GA Bar #652875
                                        Attorney for Debtor
                                        Slipakoff and Slomka, PC
                                        Overlook III
                                        2859 Paces Ferry Rd, SE
                                        Suite 1700
                                        Atlanta, GA 30339
                                        (404) 800-4001

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:                                    )
                                          )        CHAPTER 7
FREDDIE LURTIS CHAPMAN, III               )
                                          )
            Debtor.                       )        CASE NO.: 18-52134-PWB
                                          )

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all interested parties and all creditors listed on the attached matrix in the foregoing matter with a copy of the Motion to Approve Sale of Real Property and Notice of Hearing by depositing in the United States Mail a copy of the same in a properly addressed envelope with certified postage thereon addressed as follows:

William J. Layng, Jr. (served via ECF)
William J. Layng, Jr., PC
Suite 3477
2451 Cumberland Parkway
Atlanta, GA 30339-6157

U.S. Trustee (served via ECF)
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Freddie Lurtis Chapman, III
359 Tait Road
Stockbridge, GA 30281

SEE ATTACHED FOR ADDITIONAL CREDITORS

Dated this 28th day of March, 2018

                                    Respectfully Submitted,


                                    _____/s/_____
                                    Howard Slomka, Esq.
                                    GA Bar #652875
                                    Attorney for Debtor
                                    Slipakoff and Slomka, PC
                                    Overlook III

2859 Paces Ferry Rd, SE
Suite 1700
Atlanta, GA 30339
(404) 800-4001

```
Label Matrix for local noticing        (p)BANK OF AMERICA                    (p)CAPITAL ONE
113E-1                                  PO BOX 982238                         PO BOX 30285
Case 18-52134-pwb                       EL PASO TX 79998-2238                 SALT LAKE CITY UT 84130-0285
Northern District of Georgia
Atlanta
Wed Mar 28 12:17:53 EDT 2018

Freddie Lurtis Chapman III              Chase Card                           Dsnb Macys
359 Tait Road                           P.o. Box 15298                       Po Box 8218
Stockbridge, GA 30281-4395              Wilmington, DE 19850-5298            Mason, OH 45040-8218



Fortiva                                 (p)GEORGIA DEPARTMENT OF REVENUE      Internal Revenue Service
Po Box 105555                           COMPLIANCE DIVISION                   PO Box 7346
Atlanta, GA 30348-5555                  ARCS BANKRUPTCY                       Philadelphia, PA 19101-7346
                                        1800 CENTURY BLVD NE SUITE 9100
                                        ATLANTA GA 30345-3202


William J. Layng Jr.                    Lge Comm Cu                          Northside Hospital
William J. Layng, Jr., PC               Po Box 1188                          1100 Johnson Ferry Road
Suite 3477                              Marietta, GA 30061-1188              Suite 760
2451 Cumberland Parkway                                                      Atlanta, GA 30342-1743
Atlanta, GA 30339-6136


Office of the United States Trustee     Onemain                              Howard P. Slomka
362 Richard Russell Building            Po Box 1010                          Slipakoff & Slomka, PC
75 Ted Turner Drive, SW                 Evansville, IN 47706-1010            Overlook III - Suite 1700
Atlanta, GA 30303-3315                                                      2859 Paces Ferry Rd, SE
                                                                            Atlanta, GA 30339-6213


Syncb/low                               U. S. Attorney                       Wfhm
Po Box 956005                           600 Richard B. Russell Bldg.         Po Box 10335
Orlando, FL 32896-0001                  75 Ted Turner Drive, SW              Des Moines, IA 50306-0335
                                        Atlanta GA 30303-3315
```

         The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
         by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Bankamerica                             Capital One                          Georgia Department of Revenue
Po Box 982238                           15000 Capital One Dr                 1800 Century Blvd
El Paso, TX 79998                       Richmond, VA 23238                   Suite 9100
                                                                            Atlanta, GA 30345



End of Label Matrix
Mailable recipients    17
Bypassed recipients     0
Total                  17
```